## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Stephen Opalenik, Diane Opalenik, ) | |
| Amanda Opalenik, Dane Opalenik, ) | |
| Brady Opalenik, Carly Opalenik ) | |
| Plaintiffs ) | |
| v. ) | |
| Town of South Hadley, ) | |
| South Hadley Electric Light Department, ) | Civil Action No. |
| Jennifer Gundersen, Karl Kapinos, ) | |
| David Pratt, Raymond Hebert, ) | |
| Sharon Hart, Jennifer Jernigan, ) | |
| David Gardner, John Does ) | |
| Defendants ) | |
| ) | |
| ) | |

## COMPLAINT AND JURY DEMAND

### I. Introduction

1.      This is an action under for damages involving misconduct on behalf of the South Hadley

Police Department, the South Hadley Board of Health Department, South Hadley Building

Department, South Hadley Electrical Department, and South Hadley Electric light Department in

violation the Federal Civil Rights Act, violations of Fourth, and Fourteenth Amendment of the

United States Constitution, Massachusetts Tort Claims Act, Massachusetts Declaration of Rights

Articles Ten, and Fourteen.

Plaintiffs file this claim for compensatory and punitive damages arising from the Defendants'

unlawful invasion of privacy, unlawful search and seizure and unlawful eviction from their

home.

1

## II. Parties

2.      Plaintiff Stephen Opalenik is a sixty-seven year old adult male citizen of the Commonwealth who lives within Hampshire County.

3.      Plaintiff Diane Opalenik is a sixty-five year old adult female citizen of the Commonwealth who lives within Hampshire County.

4.      Plaintiff Amanda Opalenik is a thirty-eight year old adult female citizen of the Commonwealth who lives within Hampshire County.

5.      Plaintiff Dane Opalenik is a thirty-six year old adult male citizen of the Commonwealth who lives within Hampshire County.

6.      Plaintiff Brady Opalenik is a thirty-four year old adult male citizen of the Commonwealth who lives within Hampshire County.

7.      Plaintiff Carly Opalenik is a thirty-two year old adult female citizen of the Commonwealth who lives within Hampshire County.

8.      Defendant Town of South Hadley is a municipality of the Commonwealth.

9.      Defendant South Hadley Electric Light is the town's municipality-owned electric light department.

10.     On information and belief, the defendant Jennifer Gundersen was, at all times relevant hereto, employed as the Chief of Police for the Town of South Hadley, Massachusetts. She is the senior-level executive final policy maker and is responsible for overseeing the overall management and functioning of South Hadley's Police Department including supervising, training, and hiring subordinate officers, and is directly responsible for the conduct of employees of the South Hadley Police Department and has full knowledge of federal, state, and local laws,

rules, and regulations pertaining to law enforcement sworn to an oath of office within the meaning of M.G.L.c. 33 § 24 is sued in her official and unofficial capacity.

11.     On information and belief, the Defendant, Karl Kapinos (hereafter "Kapinos") was, at all times relevant hereto, employed as a police officer within the Town of South Hadley, Massachusetts and has knowledge of federal, state, and local laws, rules, and regulations pertaining to law enforcement, sworn to an oath of office within the meaning of M.G.L.c. 33 § 24 is sued in his official and unofficial capacity.

12.     On information and belief, the Defendant, David Pratt (hereafter "Pratt") was, at all times relevant hereto, employed as a police officer within the Town of South Hadley, Massachusetts and has knowledge of federal, state, and local laws, rules, and regulations pertaining to law enforcement sworn to an oath of office within the meaning of M.G.L.c. 33 § 24 is sued in his official and unofficial capacity.

13.     On information and belief, the Defendant, Raymond Hebert (hereafter "Hebert") was, at all times relevant hereto, employed as a police officer within the Town of South Hadley, Massachusetts and has knowledge of federal, state, and local laws, rules, and regulations pertaining to law enforcement sworn to an oath of office within the meaning of M.G.L.c. 33 § 24 is sued in his official and unofficial capacity.

14.     On information and belief, the Defendant, Sharon Hart (hereafter "Hart") was, at all times relevant hereto, employed as the Administrative Public Health Director within the Town of South Hadley, Massachusetts and is the senior-level executive final policy maker responsible for overseeing the overall management and functioning of public health department and has full knowledge of federal, state, and local laws, rules, and regulations pertaining to public health and

inspections sworn to an oath of office within the meaning of M.G.L.c. 33 § 24 is sued in her official and unofficial capacity.

15.    On information and belief, the Defendant, Jennifer Jernigan (hereafter "Jernigan") was, at all times relevant hereto, employed as the Administrative Assistant Public Health Director within the Town of South Hadley, Massachusetts and has full knowledge of federal, state, and local laws, rules, and regulations pertaining to public health and inspections sworn to an oath of office within the meaning of M.G.L.c. 33 § 24 is sued in her official and unofficial capacity.

16.    On information and belief, the Defendant, David Gardner  (hereafter "Gardner") was, at all times relevant hereto, employed as the Building Commissioner within the Town of South Hadley, Massachusetts and is the senior-level executive final policy maker responsible for overseeing the overall management and functioning of the public building department and has full knowledge of federal, state, and local laws, rules, and regulations pertaining to public building inspections sworn to an oath of office within the meaning of M.G.L.c. 33 § 24 is sued in his official and unofficial capacity.

17.    On information and belief, the Defendant, Roy Rivers  (hereafter "Rivers") was, at all times relevant hereto, employed as the Electrical Wiring Inspector within the Town of South Hadley, Massachusetts and is the senior-level executive final policy maker responsible for overseeing the overall management and functioning of the public electrical wiring department and has full knowledge of federal, state, and local laws, rules, and regulations pertaining to public wiring inspections and is sued in his official capacity only.

### III. Jurisdiction and Venue

18.     This action is brought pursuant to 42 U. S.C. §§ 1983, *inter alia*, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.   Accordingly, this court has jurisdiction pursuant 28 U.S.C. §§ 1331 and 1343.

19.     The Court also has pendent or supplemental jurisdiction over the states civil rights claims pursuant to 28 U.S.C. § 1367.

20.     Venue in the United States District Court for the District of Massachusetts is proper pursuant to 28 U.S.C. § 1391(b).


### IV. Statement of Facts

21.     On the morning of August 24, 2022, the plaintiffs Amanda and Diane were enjoying the peaceful morning at their 5 Bach Lane residence taking photos of a cake Amanda prepared for an instagram post when the South Hadley Police Department stormed the backdoor unannounced with AR-15 military assault rifles drawn on plaintiffs Amanda and Diane Opalenik.

22.     The officers disregarded the search warrant's knock and announce notice. The faces of the officers were covered.

23.     A video sound recording establishes Amanda in the background crying out "why is this happening."

24.     Bach Lane was loaded with dozens of state and local law enforcement officials, fire department officials and who knows what else with some brandishing AR-15 military assault rifles led by Chief Gundersen.

5

25.    Gundersen admitted to Amanda and Diane that she had to be present to make sure that there were no mistakes like what occurred at the Opalenik residence in 2008.

26.    Included with the arsenal of state and local law enforcement were officials from fire departments of Northampton to New Bedford, Massachusetts State Police Clandestine Laboratory Enforcement Team (CLET), Joint Hazardous Incident Response Team (JHIRT), Massachusetts State Police Forensic Laboratory (Chemist), Massachusetts State Police Crime Scene Services Section (CSSS) and Massachusetts State Police Special Tactics and Operations Team (STOP),  various John and Jane Does throughout the Commonwealth and a crew from the South Hadley Electric Light Department with a boom truck to disconnect the wires that supplies electricity to the residence.

27.    South Hadley Police managed to obtain a search warrant for the three separate properties; 3 Bach Lane owned by plaintiff Brady Opalenik, 4 Bach Lane owned by plaintiffs Stephen and Diane Opalenik, and 5 Bach Lane owned by Stephen and Diane Opalenik.

28.    Before the search was executed, the search warrant for the three properties was reviewed by the Northwest District Attorney's Anti-Crime Task Force Commander, Lieutenant Steve Hean and Assistant District Attorney Jeremy Bucci according to affiant Kapinos.

29.    All addressed  properties on Bach Lane are on one side of the road and are enumerated sequentially. For example, 3 Bach Lane is adjacent to 4 Bach Lane and 4 Bach Lane is adjacent to 5 Bach Lane all the way down the street to house number 13.

30.    The search warrant indicated that the search was specific to a **"TARGET GREENHOUSE"** located within back yard on 4 Bach Lane. The greenhouse was completely covered with semitransparent polyethylene incapable of exhibiting details of the contents.

31.     From the view of the road, the back yards of 4 Bach Lane and 5 Bach Lane are obstructed; enclosed by six and a half foot high fence and eight foot high fence establishing a reasonable expectation of privacy within the curtilage on both properties.

32.     The search warrant affidavit does not provide a nexus element to meet the threshold for probable cause to warrant a search of the 3, 4 and 5 Bach Lane properties.

33.     Sometime on or around July 27, and August 18, of 2022, Gundersen arbitrarily instructed Kapinos to conduct aerial surveillance of the 3, 4 and 5 Bach Lane properties at approximately 3,000 feet or more with the use of a half million dollar visual enhancement video device that is not in the general public use. Said video device has the capabilities to explore the details of the properties that would previously have been unknowable without physical intrusion of the constitutionally protected fenced-in backyards at 4 and 5 Bach Lane. The affidavit states that thermal imaging was also conducted during the surveillance flight. The defendants have not made a full disclosure as to how many aerial surveillance flights that may have been conducted.

34.     Search warrants for criminal investigative purposes were not obtained prior to the aerial surveillance search of the constitutionally protected curtilage and the fully enclosed greenhouse building within the curtilage.

35.     The video fails to show any evidence at the 3 Bach Lane, 4 Bach Lane and 5 Bach Lane properties that rises to the level of criminal activity. The aerial surveillance does however, show its intrusiveness on the privacy of the Opalenik's enclosed swimming pool deck at 5 Bach Lane where oftentimes the extreme privacy is necessary and is always expected.

7

36.    Gundersen and Kapinos knew that the Opaleniks had established a reasonable expectation of privacy demonstrated by the fenced-in curtilage at the 4 and 5 Bach Lane properties.

37.    It's readily apparent that since the aerial surveillance video did not demonstrate any activity that rose to the level for probable cause to obtain a search warrant, Pratt manufactured a fraudulent story claiming that he meandered into the backyards of 4 and 5 Bach Lane describing his observations of the contents within the greenhouse at 4 Bach Lane to be marijuana plants in excess of the legal amount.

38.    However, affiant Kapinos states that "Officer Pratt had *only* made his observations of the "TARGET GREENHOUSE" on 4 Bach Lane from the *exterior* of the property fence which *he could see over*" and saw the four foot tall plants in excess of the legal amount. The fence is a stockade style fence and is six feet in height and sits six inches off of the ground.

39.    Pratt is six foot three inches with an eye view of five foot nine inches. For Pratt to make an observation over a six foot six inch high fence looking downward to view four foot tall plants, Pratt would have to be well over seven feet tall. Pratt never made any observations of the contents of the greenhouse as explained by Kapinos.

40.    Kapinos provided photos for the search warrant showing that he made a drive by observation of the six foot six inch tall fencing. Without the process of investigating to determine the actual height of the fence, Kapinos with reckless diregard for the truth did not disclose to the issuing judge the height of the fence or the visual height of Pratt within the affidavit for the search warrant.

8

41.    A report was made by Pratt but does not state any of the claims made by Kapinos that Pratt could see over the six-foot six-inch high fence into the backyard from the exterior side.

42.    Pratt's written report is in regard to an incident that occurred at the Opalenik 5 Bach Lane residence on June 24, 2022.

43.    On June 24, 2022, at 9:14 am, Stephen Opalenik received a text from his wife Diane that the police were called regarding their eldest son Dane for a psychotic break. Stephen just left the house for work. Stephen immediately turned around and headed for home. He arrived in a matter of five to ten minutes. Stephen met with the officers that included Pratt out in the street in the front of the 5 Bach Lane residence.

44.    Stephen recalls one of the officers stating that he knocked at the front door and his daughter Carly answered, they said they were "informed" by Carly that "Dane was not in the house."

45.    Moments later the officers were informed that Dane was found to be down towards the dead end of Bach Lane heading north towards the woods across Pearl Street. All Officers left to go down the street.

46.    The June 24, 2022 Pratt report, he makes claims in the alternative, that upon his arrival, he walked into the 5 Bach Lane residence through the back door unannounced and then stood at the bottom of the stairs of the first floor and had conversation with the plaintiff Carly Opalenik while she was standing at the top of the stairs of the second floor.

47.    Plaintiff Carly Opalenik states that Pratt never entered the residence. Carly was diagnosed the night before with Covid-19, exhausted, and was resting in bed when she heard a banging

noise at the front door. Carly went downstairs and opened the door and spoke with a tall looking officer who she later identified as Officer Pratt.

48.     The claims made by Carly are factually irrefutable demonstrated from a photo of her text she sent to her friend on the morning of June 24, 2022. The text states that she "woke up to a banging noise at the front door." The claims made by Carly corroborate with Mr. Opalenik's claim when he was informed by Pratt that he had spoke with Carly at the front door.

49.     Pratt fabricated his claim that he entered the house and had a conversation with Carly Opalenik.

50.     Pratt claims that after he had the so called conversation with Carly inside of the house, he went from inside of the residence through the back door across the deck and into the fenced-in backyards of 4 and the 5 Bach Lane residence.

51.     Pratt claims that while in the back yard of 5 Bach Lane, he walked on over to the greenhouse located in the back yard at 4 Bach Lane and looked inside the greenhouse and witnessed four foot tall marijuana plants, claiming that there was more than the allotted amount allowed by law but did not seek a search warrant or call for assistance.  He further states that he was not able to take photos with his smart phone.

52.     Pratt attempts to prove his presence in the backyard by claiming that he saw an air conditioner in the window of a 12' x 18' outbuilding located within the backyard of 5 Bach Lane. The air-conditioner was Pratt's only claim in his report as proof to indicate his presence in the backyards of 4 Bach Lane and 5 Bach Lane.

53.     Pratt's claim that he witnessed an air-conditioning unit in the window does not prove to be true based on photo evidence that happened to be taken on June 21, 2022 by plaintiff Diane

Opalenik using her iPhone. Diane's photo illustrates that there is no air conditioner in the said window of the stated outbuilding. The purpose of the photo was celebratory; Diane sent the photo to a friend as an invitation to join her for the celebration of the s

Solstice. The photo shows her holding up a glass of red wine in front of a fire which happened to catch the said outbuilding's window.

54.     The air conditioner was in fact installed at a much later date than June 24, 2022 as the plaintiff Amanda Opalenik has full control of said outbuilding and was unable to install the small air-conditioner due to a surgical procedure. Additionally, installing air conditioners at the Opalenik residence is a weekend chore, June 24, 2022 was a Friday.

55.     It can be inferred that Pratt conjured up the story of seeing the air conditioner in the window based on a still photo from one of the aerial surveillance missions that specifically targeted the outbuilding with the air conditioner in the window.

56.     Soon after the August 24, 2022 search, sometime in September, plaintiff Stephen Opalenik requested from the South Hadley Police records department all police documents regarding the June 24, 2022 domestic incident. Stephen received from the records department a report of the incident made by Officer Corey Whelihan and other documents. Pratt's report was did not exist within the records department. The document was not found where it should have been.

57.     The June 24, 2022 domestic incident involving Pratt led to court proceedings and Dane's attorney never received the Pratt report as required under the Brady rule.

58.     Kapinos did not disclose Pratt's report to the issuing judge for the search warrant.

11

59.    The affidavit states that a greenhouse behind the garage enclosed by the six-foot six-inch and eight foot high fencing at 4 Bach Lane was the singular target for their search.

60.    Being that the target for their search was for 4 Bach Lane, the defendants did not state a nexus element for probable cause noted in the affidavit for the search of the residences at 3 and 5 Bach Lane. The only nexus element for 4 Bach Lane was the manufactured stories by Kapinos and Pratt.

61.    Even though the greenhouse at 4 Bach Lane was the target of their search, the South Hadley Police had a desire to get into the 5 Bach Lane residence, and absent the nexus element for probable cause, the South Hadley Police engaged in an unconscionable scheme to deceive the issuing judge using internet mapping images pertaining to property boundary lines.

62.    The affidavit informs the issuing judge that that there is a discrepancy of the property boundary lines on Bach Lane, basing their claim on orthoimagry found online at the Massachusetts Interactive Property Map website.

63.    Gundersen and Kapinos obtained a photo copy of the orthoimagry base map from the Massachusetts Interactive Property Map website and it was supplemented with the search warrant.

64.    Gundersen and Kapinos made a claim to the issuing judge that based on the Massachusetts Interactive Property Map, MASS GIS, the imagery map opens the door to justify a search of the 3 and 5 Bach Lane properties absent the required nexus element for probable cause.

65.    The affidavit states that "The map shows that STEPHEN and DIANE's residence, 5 Bach Lane, is partially located on land considered to be on 4 Bach Lane. A portion of the right side of the home appears to be over the parcel boundary."

66.    The affidavit further states: "The imaging shows that the TARGET GREENHOUSE is not located on the property of 5 Bach Lane."

67.    Gundersen and Kapinos theorize that the imagery places the 4 Bach Lane boundary line to be partially on 5 Bach Lane intersecting through the middle of the house, and therefore, they claim that since the target of the search is the greenhouse on 4 Bach Lane and a portion of the 5 Bach Lane house sits on 4 Bach Lane, then that justifies their search of the entire 5 Bach Lane property.

68.    The theory by Gundersen and Kapinos is an intentional fabrication in reckless disregard for the truth.

69.    The truth of the matter is that the Massachusetts Interactive Property Map's website page displays imagery of the properties and their boundary lines along with a disclaimer on the same page as the map image. Gundersen and Kapinos intentionally cropped out the disclaimer and presented only the photo of the imagery map as their evidence to the issuing judge for the search warrant.

70.    The imagery map shows property boundary lines that cross over onto other parcels of property, and in some cases intersecting through the residences.

71.    The front page of the websites disclaimer states: "Assessor's parcel mapping is a representation of property boundaries, not an authoritative source. The authoritative record of

property boundaries is recorded at the registries of deeds. A legally authoritative map of property boundaries can only be produced by a professional land surveyor."

72.     The following information is also provided on the website:

**Representation of Parcel Boundaries -** "Users of parcel data, which MassGIS has approved as meeting the requirements of its standard, may find places where the boundaries conflict with visible features on orthoimagery. This is common and reflects a variety of circumstances. Often the discrepancy between the tax map and the visible road right-of-way on the orthoimagery base map is correct, as roads are not always constructed the way they were shown on the original plan. *Other factors accounting for discrepancies between the boundaries and visible features on the orthoimagery are buildings that may "lean" in the imagery because of camera angle, making them appear as if they are crossing parcel lot lines.* Also, while rights-of-way ordinarily have a standard width, that is not always true. In fact, we have seen countless instances where right-of-way widths are irregular. *Similarly, the fence, wall, or shrub line visible on the orthoimagery is not necessarily the property boundary.* In some cases, houses are built so that they straddle lot lines. Also, while MassGIS' quality assurance process is extensive and rigorous, *it is not perfect* and it is possible that we have missed some boundary compilation or other errors." (Emphasis added)

73.     Contrary to the theory of Gundersen and Kapinos and the GIS orthoimagery map, the actual boundary line of 4 Bach Lane does not run through the middle of the house located on 5 Bach Lane.

74.     Gundersen and Kapinos neglected to investigate further or disregarded the fact that the 4 Bach Lane property was bought ten years after the Opaleniks built their house on 5 Bach Lane.

The zoning law required that the house on 5 Bach Lane be a specific distance from the 4 Bach Lane property  boundary line. The 4 Bach Lane property does not include the house at 5 Bach Lane.

75.    Past title searches before the sale of properties on Bach Lane have never indicated a discrepancy regarding property boundary lines or any issues regarding adverse possession with any of the properties on Bach Lane.

76.    At the outset of the arrival of South Hadley Police on August 24, 2022, South Hadley Electric light Department under the supervision of Gundersen terminated the electrical power to the 5 Bach Lane residence. The plaintiffs inquired with police as to why the electricity was terminated, no answer was provided. The search warrant does not have any request or allowance to terminate the electricity to the residence.

77.    The plaintiffs inquired to the South Hadley Electric Light Department as to why the electrical power to the residence was terminated and who was involved, the Electric Light Department responded that they couldn't release any information as it was under control of the South Hadley Police Department.

78.    When the search concluded, later on that day, under the direction of Gundersen, personnel from the South Hadley Police department waited for the arrival of South Hadley Public Health Director Sharon D. Hart, Administrative Assistant Public Health Director Jennifer Jernigan, the Building Commissioner David Gardner and the Electrical Wiring Inspector Roy Rivers (Hereafter the Administrators) to conduct a general blanket search for code violations of the buildings on the 4 and 5 Bach Lane properties.

79.     The Administrators were not listed on the search warrant to conduct a general blanket search to look for code violations associated with their departments.

80.     The Administrators were already conducting a search of the 4 Bach Lane outbuilding  in the fenced in area before Diane Opalenik and her daughter initially met Hart in the backyard.

81.     A video/audio recording at the initial meeting between Diane and Amanda Opalenik and Board of Health Director Hart shows that Hart made no requests to Diane Opalenik to conduct a search. No consent was given by plaintiff Diane Opalenik to conduct a search as the presence of law enforcement gave her and her daughter the impression that they had no choice in the matter.

82.     While being video recorded, Hart spoke openly to Diane and Amanda Opalenik declaring that the home was automatically condemned because there was no electricity going to the home, which was terminated by the South Hadley Electric Light Department for reasons unknown.

83.     Hart then stated to Diane and Amanda that Gardner and Rivers were in the process of conducting inspections of the buildings at 4 and 5 Bach Lane to see if they could find any code violations.

84.     Hart wouldn't allow the electricity to be reconnected to the house until the Administrators were finished with their inspection of the 4 and 5 Bach Lane properties.

85.     After an inspection of the 4 Bach Lane buildings, the Administrators decided to enter the basement at the 5 Bach Lane residence.

86.     The Administrators observed in the basement electrical wiring that was a work in progress by Mr. Opalenik where he was removing dead electrical wring. The drop ceiling panels were already removed when the Administrators arrived, demonstrating that the work in removing the dead wire was already in progress by Mr. Opalenik.

87.     Plaintiff Stephen Opalenik is life long general building demolition and construction contractor. He regularly works with electrical wiring, circuit breaker panel boxes, switches and outlets under licensed supervision and is fully aware of the dangers of electricity.

88.     The Administrators concluded that the dead wiring was potentially dangerous to the habitation of the home. However, the electricity was terminated from the residence and the Administrators could not conclude that the wiring was indeed dangerous.

89.     The Administrators unanimously agreed that the residence should be declared uninhabitable based on the dead wiring in the basement and evicted the plaintiffs from their residence.

90.     The plaintiffs were not allowed to enter back into the home until they employed a licensed electrician.

91.     On August 25, 2022, plaintiffs Stephen and Diane Opalenik hired an electrician from their neighborhood. The hired electrician was not given any instruction from the wiring inspector for any specific task.

92.     The hired electrician met with the homeowners son, plaintiff Brady Opalenik. The hired electrician asked Brady what needed to be done. Brady wasn't sure but pointed to where his father was in the process of removing dead wire. The hired electrician told his assistant and Brady that the situation was ridiculous and should not have caused the home to be uninhabitable.

93.     According to Brady Opalenik, the hired electricians did not know exactly what they were there for, so the hired electrician told his assistant "well, let's get something done" and finished the process of removing dead wiring that Mr. Opalenik started.

94.    The hired licensed electrician performed the same tasks that plaintiff Stephen Opalenik was qualified to do as a home owner.

95.    On August 25, 2022, The licensed electrician finished removing the dead wire in a matter of hours and charged the plaintiffs Stephen and Diane Opalenik approximately $700.00. He said the wiring inspector would be at the residence the following morning for an inspection.

96.    In the evening of August 25, 2022, the plaintiff's hired licensed electrician made a visit to the home of plaintiff Brady Opalenik. The licensed electrician informed Brady that he had a conversation with the wiring inspector, Rivers. Rivers told the hired electrician that he received information from someone within the town government trying to influence Rivers not to go and inspect the Opalenik residence the following day, which was a Friday, wanting the Opaleniks to remain out of the home for over a week as Rivers was going to be on vacation the following week that would delay the inspection.

97.    Rivers informed the hired licensed electrician that he didn't go along with their scheme because he didn't want to see the Opaleniks out of their house for over a week.

98.    Rivers promptly showed up on the following Friday morning of August 26, 2022 and approved the inspection.

99.    While plaintiff Stephen Opalenik was openly video and audio recording Mr. Rivers on plaintiff's property, plaintiff Stephen Opalenik asked Rivers if he was aware of the requirement for an administrative search warrant before entering the premises on August 24, 2022. Rivers replied that he was unaware of the need for an administrative search warrant and said that he was there "with the cops" and "did not know what they had." Rivers did not make any statement that he requested and received permission to search the two properties on August 24, 2022.

100.    Later that day the electrical power was restored to the Opalenik residence.

101.    The Administrators demonstrated that it is a customary procedure to conduct a general blanket search of the premises for building code violations under a police search warrant that did not include the Administrators.

102.    Through Gundersen's approval, the South Hadley search warrant affiant states a claim on behalf of the South Hadley police department: "I know that the Opalenik family tends to have an anti-police anti-government mentality. I recall one instance where STEPHEN stated something to the extent of, *it's no wonder people blow up government buildings*. I also remember him mentioning the "Nazi SS" after South Hadley police officers had arrived at his property to assist with a situation / call-for-service. Even after requesting police assistance in the past, the family has made anti-police statements while officers had been on the scene. They have yelled and screamed at officers and blamed them for the families hardships. STEPHEN has mentioned that he believes there are conspiracies between the police and other government bodies to violate his rights."

103.    The previous paragraph publicized through the affidavit by South Hadley Police Department acquiesced by Gundersen portrays the Opalenik family as a danger to the law enforcement community and government bodies which may explain why the police were brandishing AR-15 military assault rifles and brought a bomb squad to the Opalenik residence on August 22, 2022.

104.    At this time it is unknown as to how many police departments throughout the state received defamatory statements about the Opalenik family from the personnel of the South Hadley Police Department.

105.    Although, Mr. Opalenik experienced a similarly published incident by the Northampton Police Department in January 2023 where South Hadley Police Officer Ray Hebert communicated to the Northampton Police Department describing Mr. Opalenik as a "Sovereign Citizen".

106.    Sovereign citizens are primarily known to be violent and anti-law enforcement which is a complete false description of Mr. Opalenik and the Opalenik family.

107.    The South Hadley Police Department's affidavit's written public disclosure that the Opaleniks are anti-government and anti-police is outrageous and entirely a false made with reckless disregard for the truth. This is a concern for the Opalenik family causing a great deal of emotional distress for them as they have evidence of being continually stalked by law enforcement and flyovers continue over their properties according to an app on one of the plaintiff's smart phone.

108.    The Opalenik family are not anti-government nor are they anti-police as there is a history of family members who served within law enforcement and are currently employed with law enforcement.

109.    The August 24, 2022 affidavit for the search warrant publicly states; "STEPHEN has mentioned that he believes there are conspiracies between the police and other government bodies to violate his rights."

110.    The Opaleniks can confirm their beliefs of government conspiracies by South Hadley Town Officials and other local government and state body officials to violate the rights of the Opaleniks through the filing of this instant complaint and former complaints.

111.    The South Hadley August 24, 2022 affidavit for the search warrant states that there was a search warrant executed in 2008 for the Opalenik's 5 Bach Lane residence, however, the affidavit omits the fact that the Massachusetts Northwestern Assistant District Attorney Pietras conceded that there was no probable cause to search the 5 Bach Lane residence and the adjacent 4 Bach Lane property dismissing the case rather than oppose an appeal filed by plaintiff Stephen Opalenik.

112.    The affidavit refers to an incident that began on March 10, 2008. The plaintiff's Stephen and Diane Opalenik happened to be investigating a dilapidated wide open hundred year old house in Hadley for purposes of purchasing and renovation when two partial owners William and Thomas Tudryn arrived and then called police.

113.    The police searched the Opalenik's vehicle and found nothing belonging to the Tudryn's and the Tudryn's informed the police that nothing was missing from the abandoned house, and despite those facts, three days later, six officers from South Hadley, Hadley and state police arrived at the Opalenik 5 Bach Lane residence with a search warrant for items claimed to be stolen from the Tudryn's abandoned house.

114.    The items claimed to be stolen were seven record albums, a box of dishes and all of the copper pipe plumbing within the house including the basement.

115.    The news of the theft was posted on numerous websites and all over the local news.

116.    The Opaleniks sensed that the South Hadley Police conspired with the Hadley Police to take an opportunistic moment to fabricate a theft to obtain a search warrant for an ulterior motive.

117.    Stephen and Diane Opalenik requested numerous times to the Hadley Police Department and the Town Administrator for any documents past or present from the Tudryn's of a theft to legitimize the police department's claims of stolen property. The Opaleniks received many documents from the town over the three year period that didn't include the Tudryn stolen property statements.

118.    In 2011, the Opaleniks filed a civil suit in federal court and told their attorney that there were no written statements of a theft by the Tudryns to Hadley police to validate the Tudryn's claim of a theft. Their attorney informed opposing counsel of the Opalenik's claim.

119.    It wasn't until nine months after filing the civil law suit that two Tudryn statement documents happen to appear from the defense attorneys at an Alternative Dispute Resolution hearing in Boston.

120.    It was at this juncture that the Opaleniks were not satisfied with their attorney as there was the appearance of impropriety when the attorney was unwilling to move forward to discovery, attempting to get the Opaleniks to accept a settlement offer without success. The attorney then bribed the Opaleniks that he would not take any fees if the Opaleniks took the settlement offer. Because of unethical reasons, the Opaleniks decided that they had no choice in the matter but to remove their attorney and proceed pro se.

121.    Thomas Tudryn claimed at his deposition that he was unaware as to who wrote his statement of theft but agreed that the signature was his.

122.    The Tudryn's testimony and statement documents were pivotal for the summary judgment decision favorable to the South Hadley and Hadley defendants.

123.    Following the summary judgement ruling, the plaintiffs received newly discovered evidence of photographs from an eyewitness illustrating that the seven record albums claimed to be stolen were found on the kitchen counter, the box of dishes claimed to be stolen were found to be on the second floor bedroom and all of the copper pipe plumbing for the entire house  claimed to be stolen remained intact.

124.    The Opaleniks provided the photographs along with an affidavit from the eyewitness to the defense attorneys. The Opaleniks invited the defense attorneys to reopen discovery but they declined, which in turn discredits the summary judgement ruling as it was now discovered that it was obtained through fraudulent testimony and documents.

125.    The Opaleniks then provided the newly discovered evidence to the magistrate judge but he was not interested in pursuing an evidentiary hearing to determine the validity of the newly discovered evidence demonstrating a partiality towards the defense, being ok with the fact that the summary judgement ruling was obtained through fraudulent testimony and documents submitted by the defense attorneys.

126.    At this juncture the insurer was now in violation of M.G.L. 176D 3(9)(d) which prohibits an insurer from refusing to pay claims without conducting a "reasonable investigation based upon all available information" and by "purposefully and strategically failing to pursue a line of inquiry because it would uncover unfavorable evidence" Bohn v. Vermont Mut. Ins. Co., 922 F. Supp. 2d 138, 149 (D. Mass. 2013) and 3(9)(f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

127.    The belated discovery that the items claimed to be stolen, were never in fact stolen, points the finger at the defense attorneys where they did not act appropriately when they offered

material evidence to the court and then learned of its falsity, obligating the attorneys to take reasonable remedial measures, including if necessary, disclosure to the tribunal.

128.    The three year belated fabricated Tudryn statement documents served no purpose other than to continue the cover-up of the conspiracy by the defendants to fabricate a theft to obtain a search warrant for the Opaleniks implicating the defense attorneys as co-conspirators by submitting fraudulent documents to the court to save the towns and the insurer from liability.

129.    In hindsight, it's common knowledge to understand why the Tudryns did not file a written statement of theft three years earlier because there was legitimately no theft.

130.    At the initial start of the 2011 civil lawsuit, defense attorneys realized that the documented statements from the Tudryns were necessary for a successful defense and somehow managed to conjure them up after the fact.

131.    Therefore, it remains as fact, that the theft of property from the Tudryn's abandoned house was a fabrication to obtain a search warrant on which to deprive the Opaleniks of their right to be free from an unreasonable search and seizure, free from unlawful prosecution and to be free from false publications that tarnished the character of Stephen and Diane Opalenik.

132.    The publicity of the defamation on the internet was overwhelming, causing severe emotional distress for all six family members and an absence in prospective clients for Mr. Opalenik's general construction business.

133.    The plaintiffs Stephen and Diane Opalenik forwarded the complete file of documents to South Hadley's Town Administrator Micheal Sullivan in 2019 to put the select board members on notice for a claim demonstrating that the 2011 civil lawsuit summary judgment favorable to

the Town was a dismal failure by their attorney and the insurer, implicating fraud and deception to the appearance of witness tampering and suborn perjury.

134.    Plaintiffs Stephen and Diane Opalenik made a personal appearance to the Selectboard members after waiting for a period of months to find out if Town Administrator Micheal Sullivan disclosed the Opalenik's complaint to the select board members.

135.    The Opaleniks addressed the Selectboard members and tried to explain their purpose for being there when the Town Administrator Micheal Sullivan spoke over the Opaleniks telling the Selectboard members to leave the room. The Opaleniks were escorted by police out of the Town Hall.

136.    The Opaleniks received a notice informing them by South Hadley Officials that the Stephen and Diane Opalenik are to never step foot into the town hall again or they will be arrested for trespassing.

137.    Following the filing of a presentment of claims under M.G.L. 258 to the Town in the instant case along with a claim regarding the 2011 lawsuit against the town, the town submitted both claims to the current insurer.

138.    The insurer declined to take the 2011 civil law suit claim because they were not the insurer at the time of the 2008 incident.

139.    The action taken by the Town to submit an insurance claim for the 2011 civil suit is an admission by the Town government that the Town is liable for the 2011 civil suit.

140.    The Town of South Hadley and Hadley remain financially indebted to the Opaleniks for damages not limited to the publicly stated false accusations of theft which caused serious

hardship to the Opaleniks general construction business forcing them to file on two separate occasions Chapter 13 bankruptcies.

141.    Prospective clients of Mr. Opalenik would Google Mr. Opalenik's name and find the fabricated story implying that he and his wife were responsible for stolen property and therefore declined to hire Mr. Opalenik.

## V. CLAIMS

## COUNT I

## CONSPIRACY AGAINST RIGHTS UNDER COLOR OF LAW (DEFENDANTS GUNDERSEN, KAPINOS, PRATT, HART, JERNIGAN, GARDNER, AND JOHN DOES OF THE SOUTH HADLEY ELECTRIC LIGHT DEPARTMENT)

142.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 144 of the Complaint and by reference, incorporates the same herein.

143.    Based on the previous allegations, the defendants Gundersen, Hart, Gardner, Kapinos, Pratt, Jernigan and John Does of the South Hadley Electric Light Department, conspired and committed overt acts of the conspiracy to violate the plaintiffs' rights under the Fourth, and Fourteenth Amendment of the United States to injure, oppress, threaten, and intimidate the plaintiffs in the free exercise or enjoyment of rights and privileges secured to them by the Constitution or the laws of the United States.

## COUNT II

### 42 U.S.C 1983 DEPRAVATION OF RIGHTS UNDER COLOR OF LAW (DEFENDANTS GUNDERSEN, KAPINOS, PRATT, HART, JERNIGAN, GARDNER, AND JOHN DOES OF THE SOUTH HADLEY ELECTRIC LIGHT DEPARTMENT)

144.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 146 of

the Complaint and by reference, incorporates the same herein.

145.    Based on the previous allegations, the defendants in their official and unofficial capacity,

Police Chief Jennifer Gundersen acting as the final decision maker, Administrative Public Health

Director Sharon Hart acting as the final decision maker, Building Commissioner David Gardner

acting as the final decision maker, Police Officer Karl Kapinos, Police Officer David Pratt,

Administrative Assistant Public Health Director Jennifer Jernigan, John Does of the South

Hadley Electric Light Department, willfully deprived or cause to be deprived the plaintiffs of

their rights, privileges, or immunities secured or protected by the Constitution and laws of the

U.S.

146.    Said defendants overtly committed acts that deprived the plaintiffs' of their right to be

free from unreasonable seizure as guaranteed by the Fourth Amendment to the United States

Constitution and Massachusetts Declaration of rights Article 14;

147.    and the right to equal protection of the laws as guaranteed by Section One of the

Fourteenth Amendment to the United States Constitution.


WHEREFORE the Plaintiffs' demand judgment to be entered against the Defendants Gundersen,

Kapinos, Pratt, Hart, Jernigan, Gardner and John Does of the South Hadley Electric Light

Department in their official and unofficial capacity jointly and severally, in an amount to be determined by a jury, plus costs, interest and punitive damages as allowed by law.

## COUNT III

### 42 U.S.C. § 1983 MONELL CLAIM
### BASED ON THE EDICTS OF FINAL DECISION MAKERS
### (DEFENDANT TOWN OF SOUTH HADLEY)

148. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 150 of the Complaint and by reference, incorporates the same herein.

149. Based on the previous allegations, the defendants, Gundersen, Hart and Gardner in their official capacity as the final decision makers acted under color of state law.

150. The actions taken by Gundersen, Hart and Gardner as the final decision makers deprived the plaintiffs of their right under Massachusetts law to be free from unreasonable, substantial or serious interference with their privacy, to be free from unreasonable search and seizure guaranteed by the Fourth Amendment to the United States Constitution and the Massachusetts Declaration of Rights Article 14;

151. The right to equal protection of the laws as guaranteed by Section One of the Fourteenth Amendment to the United States Constitution.

152. Gundersen, Hart and Gardner had final decision making authority from defendant Town of South Hadley concerning said acts when Gundersen, Hart and Gardner engaged in the act of seizure of the Opalenik properties to the effect of eventually evicting Stephen, Diane, Amanda and Carly Opalenik from their residence.

153.    Gundersen, Hart and Gardner were acting as final decision makers for the defendant town of South Hadley and the said acts of Gundersen, Hart and Gardner caused the unlawful deprivation of the plaintiffs rights, that is, that acts of Gundersen, Hart and Gardner were so closely related to the deprivation of the plaintiffs' rights as to be the moving force that caused the ultimate injury.

WHEREFORE the Plaintiffs' demand judgment to be entered against the Defendant Town of South Hadley in an amount to be determined by a jury, plus costs, interest and punitive damages as allowed by law.

## COUNT IV

### MASSACHUSETST TORT CLAIMS ACT, M.G.L. C. 258 S. 2 (DEFENDANTS GUNDERSEN, KAPINOS, PRATT, HART, JERNIGAN AND JOHN DOES OF THE SOUTH HADLEY ELECTRIC LIGHT)

154.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 156 of the Complaint and by reference, incorporates the same herein.

155.    Based on the previous allegations against the defendants, the defendants Gundersen, Kapinos, Pratt, Hart, Gardner and Jernigan in the course of their employment for the Town of South Hadley intentionally violated Opalenik's right to privacy, intentionally seized the 4 and 5 Bach Lane properties without due process, intentionally evicted of the Opaleniks from their home without due process.

156.    The South Hadley Electric Light Department acting according to the orders of the South

Hadley Police Department intentionally terminated the electric service to the home unlawfully


WHEREFORE the Plaintiffs' demand judgment to be entered against the Defendants

John Does of the South Hadley Electric Light Department, Gundersen, Kapinos, Pratt, Hart,

Jernigan, Gardner in their unofficial capacity jointly and severally, in an amount to be

determined by a jury, plus costs, interest and punitive damages as allowed by law.


## COUNT V

### INTENTIONAL AND/OR NEGLIGENT
### INFLICTION OF EMOTIONAL DISTRESS
### (DEFENDANTS GUNDERSEN, KAPINOS, PRATT, HART, JERNIGAN, GARDNER, AND JOHN DOES OF THE SOUTH HADLEY ELECTRIC LIGHT DEPARTMENT)

157.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 159 of

the Complaint and by reference, incorporates the same herein.

158.    The intentional and/or negligent conduct engaged in by the defendants named herein was

outrageous beyond the scope of common decency. Furthermore, the conduct of the defendants

was such that it would shock the conscience of any decent person in a civilized society.

159.    The defendants Gundersen, Kapinos, Pratt, Hart, Jernigan, Gardner and John Does of the

Electric Light Department without a privilege to do so, by extreme and outrageous conduct

intentionally caused severe emotional distress on the Plaintiffs.

WHEREFORE the Plaintiffs' demand judgment to be entered against the Defendants Gundersen, Kapinos, Pratt, Hart, Jernigan, Gardner and John Does of the South Hadley Electric Light Department in their official and unofficial capacity jointly and severally, in an amount to be determined by a jury, plus costs, interest and punitive damages as allowed by law.

**COUNT VI**

**42 U.S.C. 1983 DEFAMATION PER SE**
**(DEFENDANT'S GUNDERSEN, KAPINOS AND HEBERT)**

160.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 162 of the Complaint and by reference, incorporates the same herein.

161.    The statements "I know that the Opalenik family tends to have an anti-police anti-government mentality. I recall one instance where STEPHEN stated something to the extent of, *it's no wonder people blow up government buildings.* I also remember him mentioning the "Nazi SS" after South Hadley police officers had arrived at his property to assist with a situation / call-for-service. Even after requesting police assistance in the past, the family has made anti-police statements while officers had been on the scene. They have yelled and screamed at officers and blamed them for the families hardships. STEPHEN has mentioned that he believes there are conspiracies between the police and other government bodies to violate his rights." are defamatory per se and the statements were not privileged as they were not relevant in any way to the issuance of the search warrant.

162.    Gundersen in her official and unofficial capacity as the final decision maker gave her approval of the public pronouncement of the per se defamatory statements.

163.    Kapinos in his official and unofficial capacity made the statements with the approval of Gundersen giving the South Hadley Police Department personnel the understanding that making such defamatory statements, whether by libel or slander, is Gundersen's policy.

164.    Acquiesced by Gundersen, Hebert in his official and unofficial capacity in January of 2023 communicated to the Northampton Police Department a similar statement to Kapinos describing Mr. Opalenik as a "Sovereign Citizen" and is defamatory per se.


WHEREFORE the Plaintiffs' demand judgment to be entered against the Defendants Gundersen, Kapinos and Hebert in their official and unofficial capacity jointly and severally, in an amount to be determined by a jury, plus costs, interest and punitive damages as allowed by law.


## COUNT VII

### ABUSE OF PROCESS
### (DEFENDANTS GUNDERSEN, KAPINOS, PRATT, HART, JERNIGAN, GARDNER, AND JOHN DOES OF THE SOUTH HADLEY ELECTRIC LIGHT DEPARTMENT)

165.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 167 of the Complaint and by reference, incorporates the same herein.

166.    Defendants Gundersen, Kapinos, Pratt, Hart Jernigan, Gardner and John Does of the South Hadley Electric Light Department without justifiable cause terminated the electricity to the Opalenik residence, fabricated evidence to mislead a judge to issue a search warrant, unreasonably invaded the Opalenik's right to privacy by aerial surveillance without a search warrant and unlawfully evicted the Opaleniks from their home.

WHEREFORE the Plaintiffs' demand judgment to be entered against the Defendants Gundersen, Kapinos, Pratt, Hart, Jernigan, Gardner and John Does of the South Hadley Electric Light Department in their official and unofficial capacity jointly and severally, in an amount to be determined by a jury, plus costs, interest and punitive damages as allowed by law.

## COUNT VIII

### EXTRINSIC FRAUD UPON THE COURT
### VIOLATION OF THE PLAINTIFF'S'
### FOURTEENTH AMENDMENT DUE PROCESS RIGHT
### (TOWN OF SOUTH HADLEY)

167.     The plaintiffs repeat and re-alleges the allegations contained in paragraphs 1 through 169 of the Complaint and by reference, incorporates the same herein.

168.     The Town of South Hadley select board members were put on notice in 2013 and again in 2019 of their attorney's involvement regarding the civil lawsuit against the Town in 2011 where the circumstances implicate their attorney of egregious misconduct for fraud upon the court.

169.     The submitting of the belated fraudulent Tudryn documents by the attorneys as statements of material fact that contained information that the attorney eventually learned to be fraudulent was pivotal for summary judgment being a severe miscarriage of justice.

170.     The circumstances of the belated Tudryn statement documents provided to the court from the defense attorneys after the lawsuit was filed created ample suspicion as to the validity of the documents which implies that the attorney's for both town's understood that the Tudryn statement documents were necessary to the success of their defense and so they had them created.

171.    The intentional misrepresentation, concealment of material facts, the appearance of witness tampering and suborn perjury of witnesses by the defense prevented the Plaintiffs Stephen and Diane Opalenik from presenting their case effectively violating their due process rights.

172.    The Tudryn statements were fabricated and were submitted as a material fact, implicating the Hadley Police Chief Dennis Hukowizc, Patrol Officer Adam Bartlett, William and Thomas Tudryn and the attorneys for each town as participants in an unconscionable scheme to deceive the court which is the First Circuit's definition of fraud upon the court.

173.    In cases like this one, where the conduct is particularly egregious, characterized by lies and fabrications in furtherance of a scheme designed to conceal critical matters from the court and the non-offending party; where the conduct is perpetrated repeatedly and willfully, and established by clear and convincing evidence, such as the documentary and testimonial evidence found here, the plaintiffs are claiming for damages.

174.    WHEREFORE the plaintiffs' Stephen and Diane Opalenik demand judgment to be entered against the Defendant Town of South Hadley in an amount of the full insurance policy limit of $3,000,000.00 and the award of treble damages under 93A for fraudulent litigation plus interest.

Under Federal Rule of Civil Procedure 11, by signing below, the plaintiffs certify to the best of their knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

The plaintiffs agree to provide the Clerk's Office with any changes to the listed address where case-related papers may be served. The plaintiffs understand that our failure to keep a current address on file with the Clerk's Office may result in the dismissal of our case.

Respectfully Submitted,

Stephen Opalenik, pro se    Amanda Opalenik, pro se    Dane Opalenik, pro se

Diane Opalenik, pro se    Brady Opalenik, pro se    Carly Opalenik, pro se

5 Bach Lane
South Hadley, MA 01075
Cell 413-222-7816
Fax 413-538-9998
stvplnk1@gmail.com

Diane, Amanda and Dane Opalenik
5 Bach Lane
South Hadley MA   01075

Brady Opalenik
3 Bach Lane
South Hadley MA   01075

Carly Opalenik
36 Shady Brook
West Spfld
Springfield